**CLARK DISTRIBUTION SYSTEMS, INC., Plaintiff**

v.

**ALG DIRECT, INC., Defendant.**

**The Clark Group, Inc., Plaintiff**

v.

**ALG Direct, Inc., Defendant/Third Party Plaintiff**

v.

**Clark Distribution Systems, Inc., Third–Party Defendant.**

Civil Action No. 1:10–Cr–2575.

United States District Court, M.D. Pennsylvania.

Signed March 31, 2014.

Memorandum Vacating in Part on Reconsideration May 29, 2014.

Memorandum Denying Reconsideration Aug. 14, 2014.

Michael A. Farnan, The Farnan Law Office, Stephen J. Del Sole, William S. Stickman, Del Sole Cavanaugh Stroyd LLC, Pittsburgh, PA, for Plaintiff.

Daniel C. Sullivan, Ryan A. Mahoney, Sullivan Hincks & Conway, Oak Brook, IL, John J. Barrett, Jr., Reger, Rizzo & Darnall, LLP, Philadelphia, PA, Elisabeth K. H. Pasqualini, Harrisburg, PA, for Defendant/Third Party Plaintiff.

William S. Stickman, Del Sole Cavanaugh Stroyd LLC, Pittsburgh, PA, for Third–Party Defendant.

## MEMORANDUM

CHRISTOPHER C. CONNER, Chief Judge.

This is a consolidated civil action filed by plaintiffs Clark Distribution Systems, Inc. ("CDS") and Clark Group, Inc. ("Clark") against American Logistics Group, Inc., operating as ALG Direct, Inc. ("ALG"). CDS, a freight forwarder, alleges that ALG, a logistics provider and distributor of printed materials, breached the parties' Transportation Services Agreement. Relatedly, Clark alleges that ALG breached the terms of a sublease executed between the parties. Presently before the court are plaintiffs' omnibus motion (Doc. 65) for summary judgment and the magistrate judge's report (Doc. 99) recommending that it be granted in part and denied in part. ALG filed objections (Doc. 100) to the magistrate judge's report and recommendation ("R & R"), and the parties fully briefed the issues raised by ALG's objections. (*See* Docs. 101, 102, 105, 108). For the reasons set forth below, the court will adopt the R & R in part and reject it in part.

## I. *Factual Background* [1]

Clark is the parent company of CDS, a logistics and transportation company that provides freight forwarder services. (Doc.

---

1. In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to ALG, the nonmoving party. *See infra* Part III. Except as noted, the court's discussion of the factual background derives from the Magistrate Judge's report (Doc. 99), familiarity with which is presumed.

67 ¶¶ 1, 5; Doc. 71 ¶¶ 1, 5). ALG is a logistics company that often works with freight forwarders such as CDS to arrange for the distribution of its clients' freight. (Doc. 67 ¶ 2, 71 ¶ 2).

On June 28, 2010, CDS and ALG entered into a Transportation Services Agreement ("TSA"), wherein CDS agreed to provide freight forwarding services for ALG. (Doc. 67 ¶ 4, 71 ¶ 4). During this same time period, ALG agreed to sublease one-half of Clark's warehouse in Harrisburg, Pennsylvania ("the Harrisburg Site."). (Doc. 67 ¶ 7, 71 ¶ 7). ALG sought a Pennsylvania facility in which Clark would handle freight forwarding work pursuant to the TSA, while ALG handled separate co-mail and co-palletization operations *after* installing its own equipment.[2] (Doc. 67 ¶ 10, 71 ¶ 10, 68–2 at 3). A Letter of Intent, executed before the sublease agreement, further delineates the parties' plans. (Doc. 67–4, 71 ¶¶ 58–61, 76 ¶¶ 58–61). Somewhat inexplicably, the sublease contains an integration clause and does not reference either the TSA or the Letter of Intent. (Doc. 67 ¶¶ 11–12, 67–1, 71 ¶¶ 11–12).

In October 2010, ALG's clients began submitting freight to the Harrisburg Site for freight forwarding services. (Docs. 67 ¶ 30, 71 ¶ 30). Immediately thereafter, a conflict arose between the parties concerning CDS's handling of the freight of one of ALG's clients, Vertis Incorporated ("Ver-

tis"). (Docs. 67 ¶¶ 14–35, 71 ¶¶ 14–35). As a result, in November 2010, ALG diverted all freight away from the Harrisburg Site while ALG employees attempted to organize the freight that was already there. (Docs. 71 ¶ 82, 76 ¶ 82).

Around Thanksgiving 2010, ALG staged a number of loads for CDS to deliver to CDS's competitor, Nationwide, for ultimate delivery to USPS. (Docs. 71 ¶ 83, 76 ¶ 83). ALG alleges that CDS failed to deliver this freight as staged; instead, the freight was loaded in a largely disorganized manner and sent to Nationwide. (Docs. 71 ¶ 84, 76 ¶ 84). ALG stopped paying invoices to CDS under the TSA in November 2010. (Doc. 67 ¶ 41; Doc. 71 ¶ 41). ALG also made its last rent payment under the Sublease in November 2010, which reflected a pre-payment of rent for the month of December.[3] (*See* Doc. 67 ¶ 42, Doc. 71 ¶ 42, Doc. 67–1; *compare* Doc. 68–9 at 13–14 *with* Doc. 68–9 at 15–17). On December 17, 2010, legal counsel for Clark and CDS sent a letter to ALG demanding that ALG "immediately cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities." (Doc. 71 ¶ 85; Doc. 76 ¶ 85).

## II. *Procedural History*

CDS filed the instant action against ALG and its then-president, Patrick Del Monico [4] on December 17, 2010, asserting

---

**2.** In its objections, ALG emphasizes that no co-mail or co-palletization equipment was ever installed at the Harrisburg facility and that the only activity that occurred at the Harrisburg Site was Clark's handling of ALG's freight pursuant to the TSA. (Doc. 100 at 3–4, 71 ¶ 62, 76 ¶ 62).

**3.** ALG objects to the Magistrate Judge's conclusion that ALG withheld rental payments *before* Clark sent ALG the December 17, 2010 letter demanding that ALG "cease shipping of any additional [c]ommodities and make ar-

rangements to collect all [c]ommodities located at CDS facilities." (*See* Docs. 71 ¶ 85, 76 ¶ 85, 99 at 18, 100 at 4–5). ALG explains that the Magistrate Judge inappropriately relied on the parties' statements of fact, which state that ALG ceased rent payments in November. (Doc. 100 at 4). Significantly, ALG did not attempt to clarify this fact by citing to record evidence until *after* the issuance of the R & R.

**4.** Clark initially alleged negligent misrepresentation against Del Monico. On April 20, 2011 Clark filed a notice of voluntary dismiss-

breach of contract and anticipatory repudiation against ALG. (Doc. 1 at 5–6). On July 29, 2011, 2011 WL 3241348, the court granted ALG's motion to dismiss for lack of subject matter jurisdiction with leave to amend. (Doc. 32). CDS filed a proper amended complaint that same day, which alleges only breach of contract against ALG under the terms of the parties' transportation services agreement ("the TSA case"). (Doc. 33 ¶¶ 30–32).

On January 26, 2012, the court granted a joint motion to consolidate the TSA case with *Clark Group, Inc. v. ALG Direct, Inc.* (Civ.A. No. 1:11–CV–1299) ("the Sublease case"). In the Sublease case, Clark alleges that ALG breached the terms of the sublease executed between the parties. (Civ.A. No. 1:11–CV–1299, Doc. 1). After answering the complaint, ALG filed a third-party complaint against CDS. (Civ.A. No. 1:11–1299, Doc. 9). In the third-party complaint, ALG claims that CDS tortiously interfered with the sublease through its alleged abandonment of the TSA and that CDS and Clark conspired to cause ALG to default on the sublease. (*Id.*) On November 14, 2011, CDS filed its answer to ALG's third-party complaint. (Civ.A. No. 1:11–1299, Doc. 12).

After consolidation, ALG answered CDS's amended complaint from the TSA case. (Doc. 57). In its answer, ALG asserted several counterclaims against CDS for damages allegedly caused by CDS's mishandling of freight. (*Id.*)

CDS and Clark filed the instant omnibus motion (Doc. 65) for summary judgment on April 15, 2013. With respect to the TSA case, CDS alleges that the court should grant it partial summary judgment on ALG's counterclaims seeking an indemnification obligation for future damages incurred against Vertis. (Doc. 65 at 4, 66 at 20–24). However, while the motion was pending, ALG filed an amended counterclaim removing this claim (Doc. 93).[5] Clark also asserts that summary judgment in its favor is warranted in the Sublease case because ALG breached the sublease by withholding payment. (Doc. 66 at 7–9). ALG does not contest that it withheld payment, but instead asserts that it is not liable for damages because Clark breached ALG's covenant of quiet enjoyment by actually and constructively evicting ALG from the Harrisburg Site. (Doc. 72 at 1).

ALG responds by emphasizing the Letter of Intent and the plain language of the TSA. According to ALG, the parties intended for CDS to handle and prepare ALG's clients' commodities for delivery. ALG argues that CDS's failure to complete this task constructively evicted ALG because it constituted an overt restriction on the use of the subleased premises, limiting the premises' utility, and forcing ALG to remove its commodities from the site. (Doc. 72 at 8–11). ALG also contends that it was actually evicted from the Harrisburg Site when Clark's counsel sent the December 17, 2010 letter, demanding that ALG "cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities." (*Id.* at 11).

Clark avers that there is no factual or legal support for ALG's defenses. Clark contends that the sublease between the parties was fully integrated and that the

al pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) dismissing Del Monico as a defendant. (Doc. 21).

**5.** CDS filed a partial motion (Doc. 94) to dismiss ALG's amended counterclaim on August 20, 2013. The court referred this motion to Magistrate Judge Susan E. Schwab (Doc. 96), who will address this motion in a separate report and recommendation.

court cannot look to the letter of intent or the TSA to demonstrate the parties' intent under the sublease. (Doc. 75 at 4–5). Clark alleges that its conduct does not rise to the level of interference with actual possession necessary to constitute a breach of the covenant of quiet enjoyment. (*Id.* at 5–9). As a factual matter, Clark asserts that the sublease was not limited to ALG's operations under the TSA, but also contemplated ALG implementing co-mail and co-palletization operations at the site. (*Id.* at 9–11). Clark further contends that its actions did not force ALG to remove its commodities from the site, and that ALG took this action unilaterally. (*Id.* at 11–12).

The instant motion was referred to Magistrate Judge Susan E. Schwab, who filed an R & R on December 3, 2013. (Doc. 99). The Magistrate Judge recommends that the court deny CDS's motion for partial summary judgment as moot in light of ALG's amended counterclaim. The Magistrate Judge further recommends that the court grant Clark's motion for summary judgment as it relates to the Sublease case. The Magistrate Judge finds that the parties do not dispute ALG's withholding of rent payments and concludes that the record evidence does not support ALG's defenses of constructive or actual eviction.

The Magistrate Judge finds that ALG was not constructively evicted because the sublease contemplated other uses for the Harrisburg Site besides CDS's handling of ALG's clients' commodities. (*Id.* at 17–18). Specifically, the sublease indicates that ALG's intended use of the Harrisburg Site was for "general warehouse purposes" and other "common and usual purposes pertaining to [its] business." (Doc. 67–1 at 5). The Magistrate Judge determines that the sublease was fully integrated and that its terms were unambiguous. (Doc. 99 at 15–16). Thus, the Magistrate Judge con-

cludes that it is precluded from considering extrinsic evidence, such as the Letter of Intent or the TSA, in its analysis of the sublease's purpose. (*Id.*) Based on the sublease's terms, the Magistrate Judge reasons that "ALG still maintained the right and privilege under the sublease to enter and use the Harrisburg site for business purposes." (Doc. 99 at 18). The Magistrate Judge further notes that there was no evidence that ALG was blocked from the Harrisburg Site or that the Harrisburg Site was changed in some fundamental way as to render it unsuitable for ALG's business purposes. (*Id.* at 18).

The Magistrate Judge also concludes that a jury could not reasonably determine that Clark actually evicted ALG. The Judge reasons that "ALG's decision to withhold rental payments occurred before Clark sent ALG the letter demanding that ALG 'cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities.'" (Doc. 99 at 18). Thus, the Magistrate Judge opines that ALG's defenses are meritless and that the court should grant summary judgment to Clark on its breach of contract claim.

ALG filed objections (Doc. 100) to the Magistrate Judge's recommendation that the court should grant Clark's motion for summary judgment as it relates to the Sublease case. Generally, ALG asserts that questions of material fact and law remain concerning its defenses that preclude summary judgment. ALG also asserts that the Magistrate Judge's finding that ALG's third-party complaint against CDS for liability on the sublease survives summary judgment is contradictory to the Magistrate Judge's recommendation to grant Clark's motion for summary judgment in the Sublease case. Neither party objected to the Magistrate Judge's recommendation to deny CDS's motion for par-

tial summary judgment as moot in the TSA case. ALG's objections are fully briefed and ripe for disposition.

## III. Legal Standard

### A. Legal Standard for a Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. *See* FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F.Supp.2d 311, 315 (M.D.Pa.2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only if this threshold is met may the cause of action proceed. *Pappas*, 331 F.Supp.2d at 315.

### B. Standard of Review for a Magistrate Judge's Recommendation

When parties file objections to a magistrate judge's report and recommendation, the court must perform a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989) (*citing* 28 U.S.C. § 636(b)(1)(c)). Local Rule 72.3 requires "written objections which ... specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." The court will review the uncontested portions of the Magistrate Judge's report for "clear error on the face of the record." *See Cruz v. Chater*, 990 F.Supp. 375, 375–78 (M.D.Pa.1998) (*quoting* FED. R. CIV. P. 72(b) advisory committee's note (1983)).

## IV. Discussion

The court will first review the Magistrate Judge's recommendation that the court deny CDS's motion for summary judgment in the TSA case as moot in light of ALG's amended counterclaim. The court will subsequently examine whether a jury could reasonably find that Clark actually or constructively evicted ALG from the Harrisburg Site, which would preclude Clark's recovery of damages for ALG's alleged breach of the sublease. Finally, the court will address the Magistrate Judge's determination that ALG's third-party complaint against CDS in the Sublease case survives despite her recommendation to grant summary judgment in favor of Clark.

### A. Moot Issue

CDS asserts that partial summary judgment should be granted on ALG's counterclaims in the TSA case for damages associated with claims brought against ALG by Vertis. While the instant motion was pending, ALG filed an amended counterclaim that removed the claim for Vertis damages. (Doc. 93). The Magistrate Judge thus recommended that the court deny CDS's partial motion for summary judgment as moot. The parties do not object to the Magistrate Judge's recommendation on this ground, (*see* Doc. 100 at 2 n. 2, 101 at 15 n. 9) and the court does not find it to be clearly erroneous. Thus, the court will deny CDS's motion for partial summary judgment as moot.

## B. ALG's Affirmative Defenses

 ALG does not contest that it withheld payments contrary to the sublease's terms. Instead, ALG asserts that it is not liable because Clark breached ALG's implied covenant of quiet enjoyment.[6] The covenant of quiet enjoyment provides that a lessor must permit a tenant the full enjoyment of its leasehold subject to any rights reserved to the lessor. *Checker Oil Co. of Delaware, Inc. v. Harold H. Hogg, Inc.*, 251 Pa.Super. 351, 380 A.2d 815, 818 (1977). Under Pennsylvania law, the covenant of quiet enjoyment is implied when not expressly provided for in a lease. *Kohl v. PNC Bank Nat'l Ass'n*, 590 Pa. 151, 912 A.2d 237, 248 (2006). Any wrongful act by the lessor that interferes with the lessee's possession, in whole or in part, breaches the covenant of quiet enjoyment and constitutes a termination of the lease agreement. *Id.* at 248–49 (quoting *Kelly v. Miller*, 249 Pa. 314, 94 A. 1055, 1056 (1915)). Hence, the breach of a covenant of quiet enjoyment may occur through constructive or actual eviction. *Id.* In the case *sub judice*, ALG alleges that Clark breached ALG's implied covenant of quiet enjoyment through both constructive and actual eviction of ALG from the Harrisburg Site. The court will address each theory in turn.

### 1. Constructive Eviction

 Constructive eviction is sufficient to breach the covenant of quiet enjoyment when the lessor's acts substantially decrease the utility of the premises. *Kohl*, 912 A.2d at 249. In other words, a breach of the covenant of quiet enjoyment through constructive eviction occurs when a lessor "changes some essential aspect of the premises so substantially as to render the property unsuitable for the purposes for which it is leased." *North Wales Assoc., Inc. v. Intown Properties, Inc.*, 152 F.Supp.2d 643, 645–46 (E.D.Pa.2001). The interference must be "of a substantial nature" and result in the tenant's abandonment of the premises. *Kuriger v. Cramer*, 345 Pa.Super. 595, 498 A.2d 1331, 1338 (1985).

 Constructive eviction sufficient to breach the covenant of quiet enjoyment

---

6. The sublease contains a provision concerning ALG's right to remedy any defaults following written notice:

> In the event [Clark] defaults in keeping, observing or performing any of the terms, provisions, covenants and conditions contained in the Lease or this Sublease, and such default is not cured (or proper corrective measures to cure such default commenced) by [Clark] within the periods specified for the curing of such defaults, [ALG] shall have the right to remedy such default after it gives written notice thereof."

(Doc. 67–1 ¶ 8). Clark cites this provision in its discussion of ALG's alleged breach of the agreement. Specifically, Clark states that ALG breached the sublease by failing to provide written notice of default under the Sublease and by withholding rent payments. (Docs. 65 at 3, 66 at 15–16, 75 at 13–14). Subsequent to the issuance of the R & R, Clark now asserts that ALG's failure to provide written notice constitutes a waiver of the defenses of constructive and actual eviction. (Doc. 101 at 8). Clark's untimely assertion of this substantive argument is fatal to its consideration. *See, e.g., Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 10 (1st Cir. 2000) ("[t]he law is clear that when a dispositive motion is heard before a magistrate judge, the movant must make all her arguments then and there, and cannot later add new arguments at subsequent stages of the proceeding."); *Thompson v. Sirmons*, 617 F.Supp.2d 1129, 1134 (W.D.Okla.2008) ("Claims, issues or theories raised for the first time in objections to a Magistrate Judge's report and recommendation are deemed waived"); *Thomas v. Chater*, Civ. A. No. 95–3194, 1997 WL 256458, at *7 n. 10 (E.D.Pa. May 9, 1997) ("Issues raised for the first time in objections to a magistrate's recommendations are deemed waived."). Moreover, Clark does not provide any legal authority for this waiver argument. Thus, the court declines to address it further.

typically involves "a structural change resulting in a diminishment of the utility of the leased premises" or "an overt restriction placed on the use of property." *Kohl v. PNC Bank Nat'l Assoc.*, 590 Pa. 151, 912 A.2d 237, 249 (2006). For example, in *2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies of Greater Phila.*, 507 Pa. 166, 489 A.2d 733 (1985), the court found that the landlord breached the new tenant's covenant of quiet enjoyment by extending the lease of a holdover tenant for the space previously leased to the new tenant. In *Checker Oil Co. of Delaware v. Harold H. Hogg, Inc.*, 251 Pa.Super. 351, 380 A.2d 815, 819 (1977), the court found that the landowner breached the tenant's covenant of quiet enjoyment by erecting a guardrail blocking one of two entries to tenant's gasoline station. The court reasoned that "[t]he impairment of the lessee's possession need not be total, but the utility of the premises must be substantially decreased by the landlord's interference with a right or privilege which is necessary to the enjoyment of the premises." 380 A.2d at 819. *See also Pollock v. Morelli*, 245 Pa.Super. 388, 369 A.2d 458 (1976) (finding breach of covenant where landowner created mini-mall around tenant's drycleaning store). A landlord's bad faith lawsuit that prevents the tenant from marketing the property may also constitute a constructive eviction. *See Kohl*, 912 A.2d at 248–49. Minor misdeeds on behalf of the landlord that do not substantially affect a tenant's use of the leasehold are not sufficient. *See North Wales Associates, Inc. v. Intown Properties, Inc.*, 152 F.Supp.2d 643, 645–46 (E.D.Pa.2001) (holding that landlord did not breach covenant of quiet enjoyment through the provision of substandard lease space because defendant did not show that simultaneous operation of heat and air conditioning systems and dirt discharge from the air conditioner substantially rendered the property unsuitable); *Rittenhouse v. Barclay White, Inc.*, 425 Pa.Super. 501, 625 A.2d 1208 (1993) (finding no breach of covenant where landlord failed to obtain proper occupancy permits); *Perakis v. Lucerne Energy, Inc.*, 385 Pa.Super. 302, 560 A.2d 814, 816 (1989) (finding no breach where defendants did not present any evidence in support of assertion that business opportunities relating to other properties may have been affected by sale of leased premises); *Derrickheim Co. v. Brown*, 305 Pa.Super. 173, 451 A.2d 477 (1982) (noting that normally, the existence of a cloud over title is not sufficient to breach the covenant of quiet enjoyment).

■ To determine whether Clark's actions substantially affected ALG's use of the premises, the court must first analyze the purposes for which ALG leased the Harrisburg Site. The sublease specifically provides that ALG would use the Harrisburg Site for "general warehouse purposes" and other "common and usual purposes pertaining to [its] business." (Doc. 67–1 at 5). Absent ambiguity, the plain meaning of the terms provided in the sublease control the court's inquiry concerning the intentions of the parties. *Drysdale v. Woerth*, 153 F.Supp.2d 678, 685 (E.D.Pa. 2001) (quoting *Warren v. Greenfield*, 407 Pa.Super. 600, 595 A.2d 1308, 1311 (1991) ("The intent of the parties to a written contract is regarded as embodied in the writing itself.")).

■ ALG asserts that the predominant purpose of the sublease was to facilitate operations under the TSA, pointing to the parties' previous Letter of Intent and the TSA itself as support. ALG contends that CDS's failure to perform under the TSA agreement rendered ALG's use of the

Harrisburg Site unsuitable.[7] However, it is well established that the parol evidence rule bars any extrinsic evidence of prior representations of the parties if the contract is fully integrated. *See Rahemtulla v. Hassam,* 539 F.Supp.2d 755, 772 (M.D.Pa.2008) (citations omitted). If a written contract contains an integration clause, the court may not consider any other evidence of the parties' agreement outside the four corners of the contract. *Id.*

ALG does not object to the Magistrate Judge's determination that the sublease was a fully integrated contract. Rather, ALG asserts that the sublease is silent concerning the nature of ALG's "common and usual" business purposes and, therefore, the court must look to the parties' prior representations in the Letter of Intent and the TSA to determine the application of this term.[8] (Doc. 100 at 6–7).

■■■■ If a fully integrated contract contains an ambiguous term, the court may evaluate parol evidence to clarify and define the ambiguous contractual term. *Bethlehem Steel Corp. v. United States,* 270 F.3d 135, 139 (3d Cir.2001); *see also Neff v. Cooper Hosp./Univ. Medical Center,* Civ. A. No. 96–5875, 1999 WL 667283, at *8 (E.D.Pa. Aug. 24, 1999) ("Where, as in this case, the Court determines that a contract with an integration clause con-

tains ambiguous terms, it is appropriate to receive in evidence parol evidence ... to explain the meaning of the ambiguous terms."). A term is ambiguous if it possesses two or more meanings or it could be understood in more than one way. *Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1011 (3d Cir.1980). In other words, when the court can divine the term's meaning "without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends," the term is not ambiguous. *Baney v. Eoute,* 784 A.2d 132, 136 (Pa.Super.Ct.2001).

■■■■ In the case *sub judice,* the term "common and usual" business purposes is not ambiguous. It is not a term that is capable of two meanings in the present circumstances. Indeed, the parties do not dispute its application: ALG agrees with Clark that the Sublease contemplated the use of the Harrisburg Site for operations under the TSA agreement as well as for other business operations, such as ALG's eventual co-mail and co-palletization operations. (*See* Doc. 67 ¶ 10; Doc. 71 ¶ 10). The parties' dispute centers on the relative importance of the TSA operations to ALG's enjoyment of the premises. This is not a question of contract interpretation, nor a question of the parties' intent behind creating the sublease. It is simply a ques-

---

**7.** Clark emphasizes that the TSA—a separate, fully-integrated contract between ALG and another entity—cannot be used to find that Clark breached ALG's covenant of quiet enjoyment. In response, ALG alleges that CDS was acting as an agent or alter-ego of Clark. *See Checker Oil,* 380 A.2d at 818 (stating that a covenant of quiet enjoyment "is breached when a tenant's possession is impaired by acts of the lessor or those acting under him" (quoting *Pollock v. Morelli,* 245 Pa.Super. 388, 369 A.2d 458, 460 (1976))). ALG also highlights several instances where Clark or Clark's counsel obfuscates any distinction between the two entities. (See, e.g., Docs. 72 at

12–13, 102 at 16–17, 108 at 2–3). The parties do not dispute that Clark is the parent company of CDS. (*See* Doc. 67 ¶¶ 1, 5; Doc. 71 ¶¶ 1, 5). For the purposes of summary judgment, the court concludes that a jury could reasonably determine that CDS was acting as Clark's agent for the purposes of determining whether Clark breached ALG's covenant of quiet enjoyment through CDS's nonperformance of the TSA agreement.

**8.** ALG raises this substantive argument for the first time in its objections to the R & R. As discussed *supra,* this is improper.

tion of fact. The court is barred from examining prior representations of the parties to determine the intent behind the sublease under the parol evidence rule, but the court is certainly not barred from considering extrinsic evidence concerning whether ALG's "common and usual" business use of the property was substantially disturbed by CDS's inaction under the TSA.[9]

In this vein, the R & R concludes that Clark did not violate ALG's right to quiet enjoyment of the premises through constructive eviction because ALG could have continued to use the premises for business purposes other than those contemplated under the TSA. (Doc. 99 at 17–18). However, constructive eviction may occur in situations where the property remains technically usable for its intended purpose. For example, the tenants of the properties at issue in *Checker Oil Co.* and *Pollock* were able to continue their business operations, but the landlord's structural changes substantially diminished the utility of using those premises for business purposes. Similarly, ALG was certainly capable of continuing to enter and use the Harrisburg Site for other business purposes, but a jury could reasonably find that its inability to conduct business operations pursuant to the TSA substantially diminished the utility of using the Harrisburg Site for business purposes. It is undisputed that, as of November 2010, ALG's only business use of the Harrisburg Site was for operations pursuant to the TSA. (*See* Doc. 67 ¶ 10; Doc. 71 ¶¶ 10, 62; Doc. 76 ¶ 62). A factfinder could reasonably conclude that ALG did not unilaterally decide to abandon the Harrisburg Site by diverting and removing its commodities, but instead that CDS's non-performance under the TSA forced its hand, resulting in a constructive eviction.[10] Thus, Clark is not entitled to judgment as a matter of law and its summary judgment motion must be denied.

### 2. Actual Eviction

According to the R & R, a jury could not reasonably conclude that Clark actually evicted ALG. ALG argues that actual eviction occurred when Clark and CDS's counsel sent ALG a letter dated December 17, 2010, directing ALG to "cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities." (Docs. 71 ¶ 85, 76 ¶ 85). The Magistrate Judge reasons that Clark did not actually evict ALG pursuant

---

9. Thus, the Magistrate Judge did not err in referencing ALG's Response to Statement of Facts (Doc. 71) and the deposition testimony of ALG's CEO (Doc. 68–2) to describe ALG's "common and usual" business purposes. (Doc. 99 at 17–18; Doc. 100 at 7).

10. ALG also appears to argue that Clark constructively evicted ALG by "forcibly removing" ALG's commodities from the Harrisburg Site in November 2010 "without ALG's knowledge or consent." (Doc. 72 at 10). ALG claims that "Clark/CDS's removal of ALG's commodities from the facility rendered the facility virtually useless to ALG." (*Id.* at 11). The R & R does not directly address this theory, presumably because it lacks any evidentiary support. The factual scenario is far more nuanced: in November 2010, ALG staged a number of loads for CDS to deliver to CDS's competitor, Nationwide, for ultimate delivery to USPS. (Docs. 71 ¶ 83, 76 ¶ 83). ALG alleges that CDS failed to deliver that freight as staged; the freight was loaded in a largely disorganized manner and sent to Nationwide. (Docs. 71 ¶ 76 ¶ 84). That ALG was dissatisfied with the methods CDS employed to deliver this freight to Nationwide does not equate to "forcible removal" of ALG's commodities "without ALG's knowledge or consent." The court finds that a reasonable jury could conclude that CDS's non-performance under the TSA forced ALG to divert and remove its commodities, thus constituting a constructive eviction, but the court finds no factual support in the record for the theory that Clark or CDS constructively evicted ALG from the Harrisburg Site by virtue of "forcible removal" of commodities.

to this letter because ALG's decision to withhold rental payments occurred in November 2010. (Doc. 99 at 18). In its objections, ALG highlights credible record evidence indicating that ALG's last rent payment in November 2010 actually represented the pre-payment of rent for the month of December. (*See* Doc. 67 ¶ 42, Doc. 71 ¶ 42, Doc. 67–1; *compare* Doc. 68–9 at 13–14 *with* Doc. 68–9 at 15–17).

Clark asserts that the timing of ALG's final rent payment is irrelevant because the evidence indicates that (1) ALG's *decision* to cease rent payments occurred in November 2010 and (2) ALG actually removed its commodities from the Harrisburg Site in November 2010. (Doc. 101 at 4 n. 4, 13, 13 n. 6). This argument is unavailing: the actual withholding of rental payments, as opposed to the decision to do so in the future, constitutes a breach. Moreover, Clark does not identify any provision in the sublease indicating that ALG's removal or diversion of commodities from the Harrisburg Site would *ex proprio vigore* constitute a breach of the sublease sufficient to negate ALG's implied covenant of quiet enjoyment. Regardless of ALG's internal *decision* to cease rent pay-

ments and to remove its commodities, as a function of its last rental payment, ALG was nevertheless entitled to quiet enjoyment of its leasehold at the Harrisburg facility through the end of December 2010.

Clark also contends that the December 17, 2010 letter's instruction for ALG to collect its commodities located at "CDS facilities" does not refer to ALG's subleased space at the Harrisburg Site.[11] (Doc. 101 at 13). Clark explains that "CDS facilities" are the network of facilities listed as entry points in the TSA's appendix. (*Id.* at 13 n. 7). Clark further contends that the letter could not be referencing ALG's Harrisburg Site because ALG had already shut down its operations and removed its freight from the site in November.[12] However, TSA's appendix clearly lists Harrisburg as an entry point. (*See* Doc. 67–3 at 11–12). ALG also presents evidence indicating that ALG understood the letter's demand to include the Harrisburg facility as a whole. (*See* Doc. 71–1 at 152–53). A factfinder could reasonably conclude that Clark's letter is a directive, ordering ALG to vacate the Harrisburg Site. Thus, ALG's defense of actual

**11.** According to Clark, the focal point of the December 10th letter is CDS and the TSA. (*See* Doc. 71–12, Exh. 35). Thus, Clark asserts that the letter cannot be construed as an eviction of ALG under the sublease. As discussed *supra*, ALG cites several instances where Clark or Clark's counsel obfuscates the two entities. (See, e.g., Docs. 72 at 12–13, 102 at 16–17, 108 at 2–3). Under the circumstances, a factfinder could reasonably interpret the letter to include a demand from Clark that ALG remove its commodities from its subleased space at the Harrisburg Site.

**12.** It is unclear whether ALG had completely removed all of its materials from the Harrisburg Site by December 17, 2010, and, unfortunately, the parties do not address this issue in their respective statements of fact. (*See* Docs. 67, 71, 76). However, Jim Hezinger, ALG's CEO, testified that, prior to the December 17, 2010 letter, he "already cleaned out

everything out of the facility." Yet, immediately thereafter, he states that Clark informed him that there was "one truckload of mail still sitting here." (Doc. 71–1 at 152–53). In contrast, Clark admits that "80 pallets of ALG's commodities and miscellaneous items occupy the space to this day." (Doc. 101 at 10). Clark highlighted this fact for the first time in its response to ALG's objections in order to support its constructive eviction argument. The parties' subsequent briefings dissolve into a discussion of whether the court may consider this fact and extraneous factual issues concerning ALG's attempts to pick up this remaining freight. The court did not consider these issues except to determine, for purposes of ALG's actual eviction claim, that factual issues remain concerning the amount of ALG's material that remained at the Harrisburg facility on December 17, 2010.

eviction to Clark's breach of contract claim must survive summary judgment.

## C. Remaining Claims

ALG further objects to the Magistrate Judge's recommendation that the Sublease case should remain open pending resolution of ALG's third-party complaint against CDS for liability on the sublease. (Doc. 99 at 19; Doc. 100 at 14). ALG contends that this recommendation is contradictory in light of the Magistrate Judge's rejection of ALG's theories of constructive eviction and the breach of the covenant of quiet enjoyment, upon which ALG's third-party complaint against CDS is substantially based. (*Id.*) In other words, the parties agree that the validity of ALG's third-party complaint rises and falls with the validity of ALG's affirmative defenses against Clark's breach of contract claim. (Doc. 100 at 14–15, 101 at 15). The court will not grant summary judgment to Clark on its breach of contract claim and, therefore, the entirety of the Sublease case, including ALG's third-party complaint against CDS, must remain open.

## V. *Conclusion*

For the foregoing reasons, the court will adopt the R & R in part and deny it in part. The court will deny CDS's motion for partial summary judgment as moot as it relates to ALG's counterclaims in the TSA case. The court will also deny Clark's motion for summary judgment in the Sublease case. An appropriate order follows.

### ORDER

AND NOW, this 31st of March, 2014, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The Magistrate Judge's report and recommendation (Doc. 99) are ADOPTED in part and REJECTED in part.

2. Plaintiffs' omnibus motion (Doc. 65) for summary judgment is DENIED.

 a. CDS's motion for partial summary judgment is DENIED as moot as it relates to ALG's counterclaims in the TSA case.

 b. Clark's motion for summary judgment in the Sublease Case is DENIED.

3. A revised scheduling order setting this matter for trial shall issue by future order of the court.

### MEMORANDUM

Presently before the court is plaintiff Clark Group, Inc.'s ("Clark") motion (Doc. 114) for reconsideration of the court's order (Doc. 110) denying plaintiff's omnibus motion (Doc. 65) for summary judgment. Clark asserts that the court committed a manifest error of law or fact by not considering whether ALG's failure to comply with the notice of default provision of the sublease made it impossible for ALG to succeed on its affirmative defenses of constructive and actual eviction. For the reasons set forth below, the court will grant the motion.

## I. *Factual Background* [1]

This is a consolidated civil action filed by plaintiffs Clark Distribution Systems, Inc. ("CDS") and Clark Group, Inc. ("Clark") against American Logistics Group, Inc., operating as ALG Direct, Inc. ("ALG"). CDS, a freight forwarder, alleges that

---

1. The parties are familiar with the lengthy factual and procedural background of this case, which the court has recited in previous opinions. (*See* Docs. 32, 56, 109). The court will discuss only those facts which are relevant to the disposition of the instant motion.

ALG, a logistics provider and distributor of printed materials, breached the parties' Transportation Services Agreement. Relatedly, Clark alleges that ALG breached the terms of a sublease executed between the parties.

On June 28, 2010, CDS and ALG entered into a Transportation Services Agreement ("TSA"), wherein CDS agreed to provide freight forwarding services for ALG. (Doc. 67 ¶ 4; Doc. 71 ¶ 4). During this same time period, ALG agreed to sublease one-half of Clark's warehouse in Harrisburg, Pennsylvania ("the Harrisburg Site."). (Doc. 67 ¶ 7; Doc. 71 ¶ 7). ALG sought a Pennsylvania facility in which Clark would handle freight forwarding work pursuant to the TSA, while ALG handled separate co-mail and co-palletization operations *after* installing its own equipment. (Doc. 67 ¶ 10; Doc. 71 ¶ 10; Doc. 68–2 at 3).

The working relationship with the parties quickly broke down. ALG stopped paying invoices to CDS under the TSA in November 2010. (Doc. 67 ¶ 41; Doc. 71 ¶ 1). ALG also made its last rent payment under the sublease in November 2010, which reflected a pre-payment of rent for the month of December. (*See* Doc. 67 ¶ 42, Doc. 71 ¶ 42, Doc. 67–1; *compare* Doc. 68–9 at 13–14 *with* Doc. 68–9 at 15–17). The parties do not dispute that ALG never provided notice to Clark before it discontinued its rental payments.

CDS filed the instant action against ALG and its then-president, Patrick Del Monico [2] on December 17, 2010, asserting breach of contract and anticipatory repudiation against ALG. (Doc. 1 at 5–6). On July 29, 2011, the court granted ALG's motion to dismiss for lack of subject matter jurisdiction with leave to amend. (Doc.

32). CDS filed a proper amended complaint that same day, which alleges only breach of contract against ALG under the terms of the parties' transportation services agreement ("the TSA case"). (Doc. 33 ¶¶ 30–32).

On January 26, 2012, the court granted a joint motion to consolidate the TSA case with *Clark Group, Inc. v. ALG Direct, Inc.* (Civ.A. No. 1:11–CV–1299) ("the Sublease case"). In the Sublease case, Clark alleges that ALG breached the terms of the sublease executed between the parties. (Civ.A. No. 1:11–CV–1299, Doc. 1). After answering the complaint, ALG filed a third-party complaint against CDS. (Civ.A. No. 1:11–1299, Doc. 9). In the third-party complaint, ALG claims that CDS tortiously interfered with the sublease by purportedly abandoning the TSA, and that CDS and Clark conspired to cause ALG to default on the sublease. (*Id.*) On November 14, 2011, CDS filed its answer to ALG's third-party complaint. (Civ.A. No. 1:11–1299, Doc. 12).

After consolidation, ALG answered CDS's amended complaint from the TSA case. (Doc. 57). In its answer, ALG asserted several counterclaims against CDS for damages allegedly caused by CDS's mishandling of freight. (*Id.*)

CDS and Clark filed an omnibus motion (Doc. 65) for summary judgment on April 15, 2013. Clark asserted that summary judgment in its favor is warranted in the Sublease case because ALG breached the sublease by withholding payment. (Doc. 66 at 7–9). ALG did not contest that it withheld payment, but instead asserted that it is not liable for damages because Clark breached ALG's covenant of quiet enjoyment by actually and constructively

**2.** Clark initially alleged negligent misrepresentation against Del Monico. On April 20, 2011 Clark filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) dismissing Del Monico as a defendant. (Doc. 21).

evicting ALG from the Harrisburg Site. (Doc. 72 at 1).

The motion was referred to Magistrate Judge Susan E. Schwab, who filed a report and recommendation ("R & R") on December 3, 2013. (Doc. 99). The Magistrate Judge recommended that the court grant Clark's motion for summary judgment as it relates to the Sublease case, reasoning that record evidence does not support ALG's defenses of constructive or actual eviction. The court did not adopt this section of the R & R and instead denied Clark's motion for summary judgment in the Sublease case. (Doc. 109). The court found that the parties do not dispute that ALG withheld rental payments contrary to the sublease's terms. (Doc. 109 at 11). However, the court found that genuine issues of material fact existed concerning whether Clark breached ALG's implied covenant of quiet enjoyment through actual or constructive eviction before ALG ceased making payments. (*Id.* at 11–21).

Clark filed the instant motion for reconsideration on April 11, 2014. (Doc. 114). The motion is fully briefed and ripe for disposition.

## II. *Legal Standard*

The denial of a motion for summary judgment is an interlocutory order. *Bines v. Kulaylat*, 215 F.3d 381, 384 (3d Cir. 2000). The court may reconsider an interlocutory order whenever it is "consonant with justice to do so." *Mohammad v. Kelchner*, Civ. A. No. 03–1134, 2005 WL 1138468, at *2 (M.D.Pa. Apr. 27, 2005) (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973)). An order that does not dispose of every claim in an action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); *see also Gallant v. Telebrands Corp.*, 35 F.Supp.2d

378, 393 (D.N.J.1998) ("a partial summary judgment order is subject to revision or vacation at any time prior to final judgment.").

Rule 59 does not formally apply to motions for reconsideration of an interlocutory order, but courts tend to grant motions for reconsideration "sparingly" and "only upon the grounds traditionally available" under Rule 59(e). *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, Civ. A. No. 94–7408, 2001 WL 881718, at *1 (E.D.Pa. May 1, 2001). Under Rule 59(e), a party seeking reconsideration must typically establish (1) a change in the law; (2) newly discovered evidence; or (3) the need to correct errors of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)). Motions for reconsideration may also be appropriate in instances "where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Rohrbach v. AT & T Nassau Metals Corp.*, 902 F.Supp. 523, 527 (M.D.Pa.1995) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)) *vacated in part on other grounds on reconsideration by* 915 F.Supp. 712 (M.D.Pa.1996).

## III. *Discussion*

The instant motion revolves around a specific provision in the sublease:

In the event [Clark] defaults in keeping, observing or performing any of the terms, provisions, covenants and conditions contained in the Lease or this Sublease, and such default is not cured (or proper corrective measures to cure such default commenced) by [Clark] within

the periods specified for the curing of such defaults, [ALG] shall have the right to remedy such default after it gives written notice thereof."

(Doc. 67–1 ¶ 8).

In its opinion disposing of plaintiffs' motion for summary judgement, and before addressing the ALG's affirmative defenses of constructive and actual eviction, the court addressed what it perceived to be a new argument raised by Clark following the Magistrate Judge's issuance of her R & R. (*Id.* at 11 n. 6). Specifically, the court noted that Clark appeared to raise two arguments concerning the sublease's notice provision: (1) that ALG breached the sublease by failing to provide written notice of Clark's default under the sublease before withholding rental payments; an argument that was preserved and discussed by the parties prior to the issuance of the R & R; and (2) that ALG's failure to provide written notice constituted a waiver of the defenses of constructive and actual eviction; an argument that was raised for the first time subsequent to the issuance of the R & R (*Id.*) The court understood that Clark was making the second argument based on a section of its brief in opposition to the Magistrate Judge's Report & Recommendation which was entitled "ALG waived its defenses by failing to follow the Sublease's dispute provisions." (Doc. 101 at 8). Within this section, Clark argued that ALG's failure to follow the notice provision "waived its defenses as a matter of law." (*Id.* at 9). The court noted that Clark did not provide any legal authority for the second argument and, indeed, had waived this argument by not raising it in its original briefings. (Doc. 109 at 11 n. 6).

■ The court never found that Clark waived its initial argument that ALG's affirmative defenses are *without merit* because ALG breached the sublease by failing to provide written notice of Clark's default under the sublease before withholding rental payments. Instead, the court mistakenly concluded that, if ALG was able to establish constructive or actual eviction sufficient to show Clark's violation of an implied covenant of quiet enjoyment, ALG's compliance or non-compliance with the other provisions of the Sublease was irrelevant.

■ In its reply brief in support of the instant motion, Clark now emphasizes that the covenant of quiet enjoyment at issue in this case is an *express* covenant. (Doc. 118 at 7). The exact parameters of an express covenant of quiet enjoyment may be limited by the terms of the lease. *Kohl v. PNC Bank Nat. Ass'n,* 590 Pa. 151, 912 A.2d 237, 248 (Pa.2006) (citing *Checker Oil Co. of Del., Inc. v. Harold H. Hogg, Inc.,* 380 A.2d 815, 818 (Pa.Super.Ct.1977)). In this case, ALG's right to quiet enjoyment is limited by the terms of the lease and sublease, including the notice provision. Specifically, the lease expressly provides that "[i]f tenant shall perform all of the covenants and agreements herein required to be performed by Tenant, Tenant shall, subject to the terms of this Lease, at all times during the Lease Term, have peaceful and quiet enjoyment of the Premises against any person claiming by, through or under Landlord." (Doc. 67–2 ¶ 20). The lease also states that Clark "shall not be in default hereunder unless Landlord fails to perform any of its obligations hereunder within 30 days after written notice from Tenant specifying such failure." (*Id.* ¶ 25). The sublease expressly incorporates all the terms, provisions, covenants and conditions of the lease. (Doc. 67–1 ¶¶ 4, 12).

Thus, ALG's right to quiet enjoyment was expressly contemplated by the lease and sublease and limited by its terms. Under the lease provisions, Clark could not have even defaulted on the express

covenant of quiet enjoyment provision unless it continued to act in contravention of the lease's terms for 30 days after ALG provided written notice specifying Clark's failure to perform its obligations. (See Doc. 67–2 ¶ 25). Further, under the sublease, ALG did not have the right to withhold rent based on Clark's default on the express covenant of quiet enjoyment provision until it gave Clark written notice. (See Doc. 67–1 ¶ 8).

ALG is correct that under the common law, a breach of the covenant of quiet enjoyment will typically excuse the tenant's non-payment of rent and otherwise discharge the tenant's obligations under the agreement. See *2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies*, 319 Pa.Super. 228, 466 A.2d 132, 139 (Pa.Super.Ct.1983); see also *Ott v. Buehler Lumber Co.*, 373 Pa.Super. 515, 541 A.2d 1143, 1145 (Pa.Super.Ct.1988) (citing the general rule that "a party . . . may not insist upon performance of the contract when he himself is guilty of a material breach of the contract."); *Chelten Ave. Bldg. Corp. v. Mayer*, 316 Pa. 228, 172 A. 675, 676–77 (Pa.1934) ("if a landlord evicts his tenant from the demised premises, his right to recover rent during the period of such eviction is suspended, and that any act of a landlord which deprives his tenant of that beneficial enjoyment of the premises to which he is entitled under his lease will amount in law to an eviction and suspend the rent."). However, the lease and sublease at issue in this case expressly modified the terms under which the covenant of quiet enjoyment may be breached or under which a breach of the covenant may be remedied. ALG did not provide Clark with appropriate notice as required by the provisions of the lease and sublease before withholding rent. Thus, even if a jury could reasonably conclude that Clark constructively or actually evicted ALG from the Harrisburg Site, it would not excuse ALG's unilateral decision to withhold rent. The court concludes that ALG breached the provisions of the sublease and Clark is entitled to judgment as a matter of law on its breach of contract claim.

The court's holding may cast doubt on the viability of ALG's third-party complaint against CDS for liability on the sublease. (Civ.A. No. 1:11–1299, Doc. 9). In this complaint, ALG claims that CDS tortiously interfered with the sublease through its alleged abandonment of the TSA, and that CDS and Clark conspired to cause ALG to default on the sublease. (*Id.*) ALG acknowledges that its third-party complaint "is based almost entirely on Clark's constructive eviction and breach of ALG's right to quiet enjoyment." (Doc. 100 at 14–15). Moreover, the court has observed that "the parties agree that the validity of ALG's third-party complaint rises and falls with the validity of ALG's affirmative defenses against Clark's breach of contract claim." (Doc. 109 at 21). However, the court's decision that Clark is entitled to summary judgment on its breach of contract claim against ALG is not based on the underlying validity of ALG's defenses of constructive or actual eviction. Instead, the court's decision is based on the fact that ALG did not have the right to withhold rent payments under the terms of the sublease without first providing notice, regardless of whether its right to quiet enjoyment was breached. The court will direct the parties to confer on this issue and, if divergent, to submit letter correspondence to the court outlining their respective positions. In the interim, ALG's third-party complaint against CDS for liability on the sublease survives.

## IV. *Conclusion*

For the foregoing reasons, the court will grant Clark's motion for summary judg-

ment in the Sublease case. An appropriate order follows.

## ORDER

AND NOW, this 29th of May, 2014, upon consideration of plaintiff Clark Group, Inc.'s ("Clark") motion (Doc. 114) for reconsideration of the court's order (Doc. 110) denying plaintiff's omnibus motion (Doc. 65) for summary judgment, dated March 31, 2014, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Clark's motion (Doc. 114) for reconsideration is GRANTED.

2. The order of the court dated March 31, 2014 (Doc. 110) is VACATED in part, insofar as it denies Clark's motion (Doc. 65) for summary judgment in the Sublease case.

3. Clark's motion (Doc. 65) for summary judgment on its breach of contract claim in the Sublease case is GRANTED.

4. The Sublease case shall remain open pending resolution of ALG's third-party complaint against CDS for liability on the sublease. The parties are to meet and confer regarding whether the court's decision invalidates ALG's third-party complaint. If the parties' positions on this issue differ, the parties shall submit letter correspondence to the court outlining their respective arguments.

5. The Clerk of Court is directed to defer entry of judgment in favor of Clark and against ALG on Clark's breach of contract claim in the Sublease case until the close of the case.

## MEMORANDUM

Presently before the court is defendant ALG Direct, Inc.'s ("ALG") motion (Doc.

129) for reconsideration of the court's order (Doc. 120) granting plaintiff Clark Group, Inc. ("Clark") summary judgment on its breach of contract claim. Additionally before the court are the parties' briefings (Docs. 125, 128) concerning whether the court's grant of summary judgment in favor of Clark on its breach of contract claim invalidates ALG's third-party complaint against third-party defendant Clark Distribution Systems, Inc. ("CDS") for tortious interference. For the reasons set forth below, the court will deny ALG's motion (Doc. 129) for reconsideration. The court will also enter judgment in favor of CDS on ALG's third-party complaint in its entirety.

## I. *Factual Background* [1]

This is a consolidated civil action filed by plaintiffs Clark Distribution Systems, Inc. ("CDS") and Clark Group, Inc. ("Clark") against American Logistics Group, Inc., operating as ALG Direct, Inc. ("ALG"). CDS, a freight forwarder, alleges that ALG, a logistics provider and distributor of printed materials, breached the parties' Transportation Services Agreement. Relatedly, Clark alleges that ALG breached the terms of a sublease executed between the parties.

On June 28, 2010, CDS and ALG entered into a Transportation Services Agreement ("TSA"), wherein CDS agreed to provide freight forwarding services for ALG. (Doc. 67 ¶ 4; Doc. 71 ¶ 4). During this same time period, ALG agreed to sublease one-half of Clark's warehouse in Harrisburg, Pennsylvania ("the Harrisburg Site."). (Doc. 67 ¶ 7; Doc. 71 ¶ 7). ALG sought a Pennsylvania facility in which Clark would handle freight forward-

---

1. The parties are familiar with the lengthy factual and procedural background of this case, which the court has recited in previous opinions. (*See* Docs. 32, 56, 109, 119). The court will discuss only those facts which are relevant to disposition of the instant motion.

ing work pursuant to the TSA, while ALG handled separate co-mail and co-palletization operations *after* installing its own equipment. (Doc. 67 ¶ 10; Doc. 71 ¶ 10; Doc. 68–2 at 3).

The working relationship between the parties quickly broke down. ALG stopped paying invoices to CDS under the TSA in November 2010. (Doc. 67 ¶ 41; Doc. 71 ¶ 1). ALG also made its last rent payment under the sublease in November 2010, which reflected a pre-payment of rent for the month of December. (*See* Doc. 67 ¶ 42, Doc. 71 ¶ 42, Doc. 67–1; *compare* Doc. 68–9 at 13–14 *with* Doc. 68–9 at 15–17). The parties do not dispute that ALG never provided notice to Clark before it discontinued its rental payments.[2]

CDS filed the instant action against ALG and its then-president, Patrick Del Monico[3] on December 17, 2010, asserting breach of contract and anticipatory repudiation against ALG. (Doc. 1 at 5–6). On July 29, 2011, the court granted ALG's motion to dismiss for lack of subject matter jurisdiction with leave to amend. (Doc. 32). CDS filed a proper amended complaint that same day, which alleges only breach of contract against ALG under the terms of the parties' transportation services agreement ("the TSA case"). (Doc. 33 ¶¶ 30–32).

On January 26, 2012, the court granted a joint motion to consolidate the TSA case with *Clark Group, Inc. v. ALG Direct, Inc.* (Civ.A. No. 1:11–CV–1299) ("the Sublease case"). In the Sublease case, Clark alleges that ALG breached the terms of the sublease executed between the parties. (Civ.A. No. 1:11–CV–1299, Doc. 1). After answering the complaint, ALG filed a third-party complaint against CDS. (Civ.A. No. 1:11–1299, Doc. 9). In the third-party complaint, ALG claims that CDS tortiously interfered with the sublease by purportedly abandoning the TSA, and that CDS and Clark conspired to cause ALG to default on the sublease. (*Id.*) On November 14, 2011, CDS filed its answer to ALG's third-party complaint. (Civ.A. No. 1:11–1299, Doc. 12).

After consolidation, ALG answered CDS's amended complaint from the TSA case. (Doc. 57). In its answer, ALG asserted several counterclaims against CDS for damages allegedly caused by CDS's mishandling of freight. (*Id.*)

CDS and Clark filed an omnibus motion (Doc. 65) for summary judgment on April 15, 2013. Clark asserted that summary judgment in its favor is warranted in the Sublease case because ALG breached the sublease by withholding payment. (Doc. 66 at 7–9). ALG did not contest that it withheld payment, but instead asserted that it is not liable for damages because Clark breached ALG's covenant of quiet enjoyment by actually and constructively evicting ALG from the Harrisburg Site. (Doc. 72 at 1).

The motion was referred to Magistrate Judge Susan E. Schwab, who filed a report and recommendation ("R & R") on December 3, 2013. (Doc. 99). The Magistrate Judge recommended that the court grant

---

**2.** For the first time in the instant motion, ALG alleges that it did provide notice to Clark before discontinuing its rental payments. (*See* Doc. 128 at 4, 7–9; Doc. 132 at 4–5). However, as discussed *infra*, the exhibits ALG submits in support of this contention are dated months *after* ALG ceased paying rent on the sublease. Hence, the court rejects ALG's notice argument.

**3.** Clark initially alleged negligent misrepresentation against Del Monico. On April 20, 2011 Clark filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) dismissing Del Monico as a defendant. (Doc. 21).

Clark's motion for summary judgment as it relates to the Sublease case, reasoning that record evidence does not support ALG's defenses of constructive or actual eviction. The court did not adopt this section of the R & R and instead denied Clark's motion for summary judgment in the Sublease case. (Doc. 109). The court found that the parties do not dispute that ALG withheld rental payments contrary to the sublease's terms. (Doc. 109 at 11). However, the court found that genuine issues of material fact existed concerning whether Clark breached ALG's implied covenant of quiet enjoyment through actual or constructive eviction before ALG ceased making payments. (*Id.* at 11–21).

Clark filed a motion for reconsideration on April 11, 2014. (Doc. 114). Clark asserted that ALG's failure to provide written notice of Clark's default under the sublease before withholding rental payments was fatal to ALG's affirmative defenses of breach of the covenant of quiet enjoyment through actual or constructive eviction. Ultimately, the court determined that the lease included an express covenant of quiet enjoyment, *limited by* the other terms of the lease, including a notice provision. (See Doc. 119 at 7–8). The court concluded that ALG did not provide Clark with appropriate notice as required by the provisions of the lease and sublease before withholding rent. (*Id.* at 9). Thus, the court found that ALG breached the provisions of the sublease and granted summary judgment to Clark as a matter of law on its breach of contract claim. (*Id.*)

The court noted that its holding may cast doubt on the viability of ALG's third-party complaint against CDS for liability on the sublease. (See Civ. A. No. 1:11–1299, Doc. 9). In this complaint, ALG claims that CDS tortiously interfered with the sublease through its alleged abandonment of the TSA, and that CDS and Clark conspired to cause ALG to default on the sublease. (*Id.*) ALG had previously acknowledged that its third-party complaint "is based almost entirely on Clark's constructive eviction and breach of ALG's right to quiet enjoyment." (Doc. 100 at 14–15). However, the court noted that its decision that Clark is entitled to summary judgment on its breach of contract claim against ALG is not based on the underlying validity of ALG's defenses of constructive or actual eviction. Instead, the court's decision was based on the fact that ALG did not have the right to withhold rent payments under the express terms of the sublease in the absence of providing notice, regardless of whether its right to quiet enjoyment was breached. Thus, the court directed the parties to confer on this issue, and, if divergent, to submit letter correspondence to the court outlining their respective positions.

On July 3, 2014, Clark's counsel submitted a letter to the court indicating that the parties were unable to agree on the disposition of the tortious interference claims, and ALG sent a letter in response. (Docs. 125, 128). ALG also filed the instant motion (Doc. 129) for reconsideration on July 17, 2014, claiming that Clark's actual or constructive eviction of ALG went to "the essence of the contract" and thus excused any subsequent failure on behalf of ALG to provide notice before withholding rental payments. (Doc. 129 at 2 (citing *LJL Transportation, Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639, 651 (Pa. 2009))). The motion is fully briefed and ripe for disposition.

## II. *Legal Standard*

 The partial grant of a motion for summary judgment is an interlocutory order. See *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). The court may recon-

sider an interlocutory order whenever it is "consonant with justice to do so." *Mohammad v. Kelchner*, Civ. A. No. 03–1134, 2005 WL 1138468, at *2 (M.D.Pa. Apr. 27, 2005) (quoting *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973)). An order that does not dispose of every claim in an action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED.R.CIV.P. 54(b); see also *Gallant v. Telebrands Corp.*, 35 F.Supp.2d 378, 393 (D.N.J.1998) ("[A] partial summary judgment order is subject to revision or vacation at any time prior to final judgment.").

 Rule 59 does not formally apply to motions for reconsideration of an interlocutory order, but courts tend to grant motions for reconsideration "sparingly" and "only upon the grounds traditionally available" under Rule 59(e). *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, Civ. A. No. 94–7408, 2001 WL 881718, at *1 (E.D.Pa. May 1, 2001). Under Rule 59(e), a party seeking reconsideration must typically establish (1) a change in the law; (2) newly discovered evidence; or (3) the need to correct errors of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)). Motions for reconsideration may also be appropriate in instances "where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Rohrbach v. AT & T Nassau Metals Corp.*, 902 F.Supp. 523, 527 (M.D.Pa.1995) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)) *vacated in part on other grounds on reconsideration by* 915 F.Supp. 712 (M.D.Pa.1996).

### III. *Discussion*

#### A. ALG's Motion for Reconsideration

For the first time in this litigation, ALG cites *LJL Transportation, Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639, 651 (Pa.2009) for the premise that "a contractual provision requiring an opportunity to cure prior to termination does not bar immediate termination based on a breach that goes to the essence of the contract." (Doc. 128 at 4 (internal citations omitted)). ALG asserts that Clark's alleged actual or constructive eviction went to "the essence of the contract" and thus excused any subsequent failure on behalf of ALG to provide notice before withholding rental payments.

ALG filed this motion 49 days after the court's entry of the order concerned. Rule 54(b) allows *the court* to revise an interlocutory order at any time prior to entry of final judgment, but Local Rule 7.10 requires *the parties* to file any motion for reconsideration within fourteen (14) days after entry of the order. Thus, ALG's motion is untimely.

Moreover, ALG has not identified any basis—such as a change in the law, newly discovered evidence, or the need to correct errors of law or fact—rendering a motion for reconsideration appropriate in this case. Instead, ALG presents a new argument based on a 2009 case that was readily available to it throughout this protracted litigation.

Even if ALG's motion was timely and provided an adequate ground for reconsideration, ALG's argument lacks substantive merit. In *LJL*, a franchisor terminated a franchise agreement when it discovered that the franchisee was engaging in fraud

directly harmful to the franchisor's interests. 962 A.2d at 641–43. The franchisee sued the franchisor for breach, claiming that the terms of the franchise agreement required the franchisor to provide notice and a time to cure before termination. *Id.* at 643. The court found that the franchise agreement's notice provision was not exclusive because another provision in the agreement reserved the franchisor's right to "terminate the contract without notice in the event of a vital and essential breach." *Id.* at 652; see also *Trinity Indus., Inc. v. Greenlease Holding Co.*, Civ.A. No. 08–1498, 2010 WL 419420 (W.D.Pa. Jan. 29, 2010) ("Like the agreement in LJL Transport, the Agreement in issue here contains an express reservation by Trinity of its right to exercise all remedies available to it, i.e., which it 'may otherwise have at law or equity.' "). The court concluded that "when there is a breach of contract going directly to the essence of the contract … the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary." *Id.*

Unlike in *LJL*, the notice provision in this case is explicit, absolute, and exclusive. (*See* Doc. 67–1 ¶ 8). There is no separate provision reserving either party's right to terminate the contract without notice. Thus, *LJL* is factually distinguishable and the holding therein is inapposite. Accordingly, the court will deny reconsideration.[4]

**B. Viability of ALG's Third–Party Complaint**

The court must also address the continued viability of ALG's third-party complaint against CDS for liability on the sublease due to tortious interference and civil conspiracy. (*See* Civ. A. No. 1:11–1299, Doc. 9). CDS does not contend that ALG's third-party complaint is invalid because of the court's grant of summary judgment to Clark on its breach of contract claim against ALG. Instead, CDS states that ALG's tortious interference claims are legally untenable because Pennsylvania law permits tortious interference claims only when a defendant has disrupted a contract through acts directed at a third-party, not through acts directed at a plaintiff. ALG responds that no case in Pennsylvania specifies that the defendant's "purposeful action" must be directed at the third party instead of the plaintiff. (Doc. 128 at 2).

■■■ In Pennsylvania, the Restatement (Second) of Torts § 766 governs a claim for tortious interference. *See Windsor Securities, Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659 (3d Cir.1993) (citing *Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978); *Nathanson v. Medical College of Pa.*, 926 F.2d 1368 (3d Cir.1991)). Section 766 provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by *inducing or otherwise causing the third person not to perform the contract,* is subject to liability to the other for the pecuniary loss resulting to the other *from the failure of the third person to perform the contract.*

---

4. Also for the first time in this litigation, ALG claims that it provided adequate notice under the terms of the sublease prior to discontinuing rental payments. (*See* Doc. 128 at 4, 7–9; Doc. 132 at 4–5). In support of this contention, ALG presents two emails that were never introduced into the summary judgment record. Moreover, the emails are dated *months after* ALG ceased paying rent and thus would not constitute proper notice under the sublease's notice provision as a matter of law. Hence, the court rejects this belated ground for reconsideration.

Restatement (Second) of Torts § 766 (emphasis added). Thus, a tortious interference claim in Pennsylvania expressly requires that the defendant's conduct be directed at a third-party and not at the plaintiff. *Windsor,* 986 F.2d at 660; *Cottman Transmission Sys., LLC v. Bence,* Civ.A. No. 03–5467, 2004 WL 739907, at *3 (E.D.Pa. April 5, 2004) ("Given that the claim set forth in Count III is premised upon tortious action directed at Defendant himself, the allegations are not cognizable under Pennsylvania law."); *Waterfront Renaissance Assoc. v. City of Phila.,* Civ. A. No. 07–1045, 2008 WL 862705, at *9 (E.D.Pa. March 31, 2008) ("The interference must be directed toward a third party business relation"). Pennsylvania does not recognize a separate cause of action "for preventing or hindering plaintiff's performance of its own contract." *Windsor,* 986 F.2d at 660. ALG's assertions to the contrary are meritless.

■ In the case *sub judice,* the parties do not dispute that all of CDS's (allegedly tortious) actions were directed to ALG, rather than any third party. Thus, under the provisions of § 766, ALG is unable to prevail on a claim of tortious interference as a matter of law.

ALG contends that the court should adopt or apply Restatement (Second) of Torts § 766A to this case. (Doc. 128 at 5–6). Section 766A permits tortious interference claims against a defendant for disruptive acts directed at a plaintiff instead of a third-party. However, § 766A has not been adopted in Pennsylvania and the Third Circuit has predicted that it will not be adopted. *See Gemini Physical Therapy and Rehabilitation v. State Farm Mutual Automobile Ins. Co.,* 40 F.3d 63, 66 (3d Cir.1994); *Phillips v. Selig,* 959 A.2d 420, 437 n. 13 (Pa.Super.2008). Until the Supreme Court of Pennsylvania issues a contrary decision, this court is bound by the Third Circuit's decision in *Gemini* predicting that Pennsylvania will not recognize the cause of action for tortious interference set forth in § 766A.

■ For all of these reasons, CDS is entitled to summary judgment as a matter of law on ALG's tortious interference claim. The court observes that ALG's third-party complaint includes a claim for civil conspiracy against CDS based on its alleged tortious interference with the sublease. Absent a valid and independent civil cause of action for tortious interference, ALG cannot recover on the basis of civil conspiracy to commit tortious interference. *See Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1342 (Pa.Super.Ct.1987) ("[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."). Hence, in the Sublease case, Clark is entitled to summary judgment as a matter of law on its breach of contract claim and CDS is entitled to summary judgment as a matter of law on ALG's third-party complaint in its entirety.

## IV. *Conclusion*

For the foregoing reasons, the court will deny ALG's motion (Doc. 129) for reconsideration of the court's order (Doc. 120) granting summary judgment to Clark on its breach of contract claim in the Sublease case. Moreover, the court will enter judgment in favor of CDS on ALG's third-party complaint in the Sublease case. An appropriate order follows.

### *ORDER*

AND NOW, this 14th of August, 2014, upon consideration of defendant ALG Direct, Inc.'s ("ALG") motion (Doc. 129) for reconsideration of the court's order (Doc. 120) granting summary judgment to plain-

tiff The Clark Group, Inc. ("Clark"), on its breach of contract claim, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. ALG's motion (Doc. 129) for reconsideration is DENIED.

2. Judgment is GRANTED in favor of CDS on ALG's third-party complaint in its entirety.

3. The Clerk of Court is directed to defer entry of judgment in the Sublease case until the close of the TSA case.

### REPORT AND RECOMMENDATION

SUSAN E. SCHWAB, United States Magistrate Judge.

In this consolidated civil action, the plaintiffs have filed an omnibus motion for summary judgment. For the reasons set forth herein, I recommend that the motion be granted in part and denied in part.

### I. Background and Procedural History.

This matter ("the TSA Case") was initiated on December 17, 2010, when the plaintiff, Clark Distribution Systems, Inc. ("CDS"), filed a complaint against defendant ALG Direct, Inc. ("ALG"), for breach of contract. *Doc.* 1. In its complaint, CDS also raised a claim for negligent misrepresentation against Patrick Del Monico ("Del Monico"); however, on April 20, 2011, Del Monico was voluntarily dismissed. *Doc.* 21. Thereafter, on July 29, 2011, the Court granted ALG's motion to dismiss for lack of subject matter jurisdiction, but CDS was granted leave to amend its complaint. *Id.*

On the same date that the Court dismissed CDS' complaint for lack of subject matter jurisdiction, CDS filed a proper amended complaint. *Doc.* 33. In the amended complaint, CDS brought a breach of contract claim against ALG, seeking payment for services rendered under a transportation services agreement ("TSA"). *Id.*

Several months later, on January 26, 2012, the Court granted a joint motion to consolidate this matter with *Clark Group, Inc. v. ALG Direct, Inc.* (No. 1:11–CV–1299, CCC) ("The Sublease Case"). *Doc.* 48. In the Sublease Case, the plaintiff, Clark Group, Inc. ("Clark"), filed a complaint against ALG for breach of contract seeking payments for rent under the terms of a sublease executed between the parties. (1:11–CV–1299, *Doc.* 1). After answering the complaint, ALG filed a third-party complaint against CDS. (1:11–CV–1299, *Doc.* 9). Generally, in the third-party complaint, ALG claims that it should not be liable to Clark for any damages because CDS tortuously interfered with the sublease through its alleged abandonment of the TSA. *Id.* As well, ALG rebukes liability on grounds that CDS and Clark conspired to cause it to default on the sublease. *Id.* On November 14, 2011, Clark filed its answer to ALG's third-party complaint. (1:11–CV–1299, *Doc.* 12).

On September 10, 2012, after the cases had been consolidated, ALG answered CDS' amended complaint from the TSA Case. *Doc.* 57. Along with its answer, ALG contemporaneously asserted several counterclaims against CDS for damages allegedly incurred due to CDS' purported mishandling of freight. *See generally, id.*

On April 15, 2013, after the discovery deadline lapsed (*see Doc.* 63), CDS and Clark filed an omnibus motion for summary judgment. *Doc.* 65. Along with the motion, CDS and Clark filed a brief in support, statements of fact, and supporting documents. *Docs.* 66, 67 & 68. On May 6, 2013, ALG filed a timely brief in opposition, counterstatements of fact, and other documents. *Docs.* 71 & 72. Thereafter, on May 20, 2013, CDS and Clark filed a

timely reply brief along with an answer to ALG's counterstatement of facts. *Docs.* 75 & 76. The motion, having been fully briefed, is ripe for disposition on the merits.

## II. *Factual Statement.*[1]

Clark is the parent company of CDS, which is a logistics and transportation company that provides freight forwarder services, such as facilitating the delivery of newsstand publications, magazines, and mass-market mailings from publishing and printing companies to their consignees, including the United States Postal Service ("USPS"). ALG is a logistics company that often works with freight forwarders and carriers to arrange for the distribution of its clients' freight, normally printed materials.

In early 2010, CDS and ALG began negotiating the formation of an alliance wherein, *inter alia,* CDS would serve as ALG's exclusive freight forwarder in specific regions throughout the United States. *Doc.* 67 at ¶ 3. Later, on June 28, 2010, CDS and ALG entered into a TSA that applied to the performance of interstate, intrastate, and international transportation, and related services, performed by CDS for ALG. *Id.* at ¶ 4; *Doc.* 67-3 at 2.

Around the same time that the alliance negotiations were ongoing, Clark and ALG executed a sublease agreement, wherein ALG agreed to sublease one-half of Clark's warehouse in Harrisburg, Pennsylvania (the "Harrisburg Site").[2] *See Doc.* 67 at ¶ 7. ALG entered into the sublease agree-

ment because it desired to have a Pennsylvania facility where Clark handled the delivery work, while ALG handled co-mail and co-palletization operations after installing its own equipment. *Doc.* 68-2 at 3. ALG's agreement to sublease portion of the Harrisburg Site was part of a mutual promise whereby ALG would sublease a portion of the Harrisburg Site and Clark or CDS would sublease a portion of ALG's Illinois facility. *Doc.* 71 at ¶ 58. According to ALG, this mutual promise was expressed in the parties' letter of intent, which was executed *before* the sublease agreement. *See id.* The sublease, though, contained an integration clause and made no reference to either the TSA or to any letter of intent.[3] *Doc.* 67-1.

In October 2010, ALG's clients began submitting freight to the Harrisburg Site for freight forwarding services. *Doc.* 67 at ¶ 30. As soon as the operations began, however, one of ALG's clients, Vertis Incorporated ("Vertis"), submitted freight that "materially deviated" from the contract held between it and ALG, and the freight failed to comply with USPS regulations. *Doc.* 67-9 at 7–10. Nevertheless, CDS attempted to service the Vertis freight on ALG's behalf. *Doc.* 67 at ¶ 32. But, delays arose, and according to ALG, in a complaint filed in Illinois state court against Vertis, the deviations "materially contributed" to such delays. *Doc.* 67-9 at 11. Also, as the delays arose, the Harrisburg Site became saturated with Vertis freight. *Doc.* 67 at ¶¶ 33–34.

1. In accordance with the standard of review for a motion for summary judgment, I will present the facts in the light most favorable to ALG, the nonmoving party. *See, infra,* Part III.

2. According to the master lease, the warehouse contained approximately 252,000 total square feet (*see Doc.* 67-2 at 24). Of that

amount, ALG subleased approximately 126,000 square feet (*see Doc.* 67-1 at 2).

3. A draft version of the parties' letter of intent included language suggesting that the sublease term be tied to the length of the parties' relationship under the TSA. *Doc.* 67 at ¶ 13; *see Doc.* 67-5 at 2. But, that language never made it into the executed sublease.

In handling the Vertis freight, CDS merely placed it on the warehouse floor without inventorying it. *See Doc.* 71–3 at 37. Clark and CDS also failed to inform ALG that the Vertis freight was received. *Id.* Further, CDS did not timely deliver other freight that was properly tendered with the accompanying documentation (i.e. Form 8125). At no time during the delays did either Clark or CDS complain that it could not deliver the Vertis commodities or that ALG should stop sending, or slow down, the commodities being submitted to the Harrisburg Site. *Doc.* 71 at 76–78. Regardless, because of the delays and customer complaints, ALG sent an employee to assess the situation and help CDS process the freight. *Id.* at ¶ 35.

Later, on November 18, 2010, CDS sent an e-mail to ALG's CEO informing him that on November 20, 2010, CDS would no longer handle any of the Vertis freight that "materially deviated" from the Vertis / ALG contract, and any freight that failed to comply with USPS regulations. *Id.* at ¶ 79. Also, CDS demanded in the email that ALG assign full-time employees to handle such freight at the Harrisburg Site. *Id.* At the time, the Vertis commodities in question accounted for approximately 50% of the freight received at the Harrisburg Site. *Id.*

Around this same time, ALG became aware that CDS had allowed certain commodities to sit undelivered within the Harrisburg Site for at least two to three weeks. *Id.* at 80. ALG further learned that only portions of complete jobs were tendered to their clients. *Id.* Also, during this period, ALG received complaints from clients about non-delivery or late delivery of their commodities. *Id.* at 81. As a result, the parties agreed that ALG would divert all freight away from the Harrisburg Site while ALG employees attempted to organize the freight that was already there. *Id.* at 82.

Subsequently, around Thanksgiving 2010, ALG staged a number of loads for CDS to deliver to Nationwide (another logistics and transportation company) for ultimate delivery to the USPS, "because Clark was incapable of getting the trucks loaded." *Id.* at ¶ 83. CDS, however, failed to deliver that freight as staged; instead, the commodities were loaded in a largely disorganized manner and sent to Nationwide. *See id.* at ¶ 84. ALG then stopped paying invoices under the TSA and rent under the sublease; all of this occurring in mid- to late November 2010. *Id.* at ¶¶ 41–42. Approximately one month later, on December 17, 2010, legal counsel for Clark and CDS sent a letter to ALG demanding that ALG "immediately cease shipping of any additional Commodities and make arrangements to collect all Commodities located at CDS facilities." *Id.* at ¶ 85. The last payment ALG made under the sublease was in November 2010. *Id.* at ¶ 42.

### III. *The Summary Judgment Legal Standard.*

Summary judgment is appropriate only when "the movant shows that there is no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which he bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir. 1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rest on his pleadings but must come forward with competent evi-

dence from which a reasonable factfinder could render a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989); *Woods v. Bentsen*, 889 F.Supp. 179, 184 (E.D.Pa.1995). Only if this threshold is met may the cause of action proceed. *Pappas*, 331 F.Supp.2d at 315.

Accordingly, in deciding a motion for summary judgment, the Court must view the evidence, making all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir.2009). Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. *Id.* at 250, 106 S.Ct. 2505.

## IV. *Discussion.*[4]

In its omnibus motion, Clark argues that summary judgment is warranted on its

breach of contract claim in the Sublease Case. *See Doc.* 66 at 4–17. As well, CDS argues that partial summary judgment should be granted in the TSA Case on ALG's counterclaims that seek an indemnification obligation for future damages incurred against Vertis. *Id.* at 17–21. For the following reasons, I recommend that the motion for summary judgment be granted in part and denied in part.

### A. The TSA Case.

CDS argues that partial summary judgment should be granted on ALG's counterclaims for damages associated with claims brought against ALG by Vertis. Specifically, CDS contends that those counterclaims are not ripe because ALG has not yet incurred any Vertis damages, as that issue is currently being litigated in Illinois state court. While this motion was pending, however, ALG was granted leave to file an amended counterclaim. *Doc.* 92. On August 5, 2013, ALG filed its amended counterclaim and removed the Vertis damages therein. *See Doc.* 93 at ¶¶ 54, 67; *see also Doc.* 72 at 14. As such, CDS' motion for summary judgment in the TSA case should be denied as moot.[5]

### B. The Sublease Case.

Clark argues that summary judgment in its favor is warranted because the record

---

**4.** Here, the parties agree that Pennsylvania law governs this action, and it is well-established that "federal courts sitting in diversity cases are required to apply the substantive law of the state whose laws govern[s]...." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir.1990). Where there is no guidance from the Commonwealth's highest court, my task is to predict how that high court would resolve the matter. *See id.* "In making such predictions [I] recognize that the state's highest authority is the best authority on its own law and that if there be no decision by that Court then [I] must apply what [I] find to be the state law after giving proper regard to the relevant rulings of other courts

of the state." *Id.* (quotations and citations omitted). Thus, "[my] role is not to form or create state law but to decide the case as [I] believe it would have been decided by the state's highest court had the [issue] arisen in the state court system." *Id.* (citing *Becker v. Interstate Properties*, 569 F.2d 1203, 1205 n. 5 (3d Cir.1977)).

**5.** On August 20, 2013, CDS filed a partial motion to dismiss ALG's amended counterclaim. *Doc.* 94. The motion became ripe on September 13, 2013, and it will be addressed in a separate report and recommendation.

unequivocally demonstrates that ALG breached the sublease by *sua sponte* withholding payments, in contradiction to the sublease's terms. *Doc.* 66 at 4. In particular, Clark relies upon Paragraph 8 of the sublease which states:

In the event [Clark] defaults in keeping, observing or performing any of the terms, provisions, covenants and conditions contained in the Lease or this Sublease, and such default is not cured (or proper corrective measures to cure such default commenced) by [Clark] within the periods specified for the curing of such defaults, [ALG] shall have the right to remedy such default after it gives [Clark] written notice thereof.

*Id.* at 6; *Doc.* 67–1 at 5. According to Clark, ALG never gave written notice of any alleged default of obligations under the sublease before withholding payments; therefore, ALG breached the agreement. *Doc.* 66 at 6.

Under Pennsylvania law, "a lease is a contract and is to be interpreted according to contract principles." *Kingsly Compression, Inc. v. Mountain Oil & Gas, Inc.,* 745 F.Supp.2d 628 (W.D.Pa.2010) (quoting *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385, 389 (Pa. 1986)). Thus, to make out a claim for breach of contract, a plaintiff must establish three elements: (1) the existence of a contract, (2) the breach of some duty imposed by that contract, and (3) resulting damages. *Johnson v. State Farm Life Ins. Co.,* 695 F.Supp.2d 201, 212 (W.D.Pa. 2010) (citing *Pennsy Supply, Inc. v. American Ash Recycling Corp.,* 895 A.2d 595, 600 (Pa.Super.2006)).

Here, there is no dispute that a valid, final, contract existed between the parties in the form of a sublease. As well, there is no dispute that ALG has withheld rent payments. *Doc.* 71 at ¶¶ 41–42. ALG, however, argues against granting sum-

mary judgment in Clark's favor contending that the implied covenant of quiet enjoyment was breached in that it was actually and constructively evicted from the Harrisburg Site.

According to ALG, the intention of the parties with respect to the sublease is reflected in the letter of intent and further reinforced by the plain language of the TSA. *Doc.* 72 at 5, 6. ALG argues that the parties' intention was to provide space for CDS to handle, warehouse, consolidate, and prepare ALG's customers' commodities for ultimate delivery to the USPS. *Id.* at 10. CDS, though, did not comply; instead, it unilaterally and unjustifiably refused to handle most commodities and ended up forcibly removing ALG's freight. *Id.* at 9–10. Thus, ALG contends that CDS' refusal and forcible removal of Vertis freight constituted an overt restriction on the use of the subleased premises and ultimately decreased the premises' utility by requiring ALG to route around the Harrisburg Site resulting in a constructive eviction. *Id.* at 10.

As mentioned, ALG also argues that it was actually evicted. According to ALG, it was actually evicted from the Harrisburg Site when Clark's counsel sent a letter on December 17, 2010, demanding that ALG "cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities." *Doc.* 72 at 11.

Clark counters by contending that ALG's argument that it was constructively evicted is factually and legally untenable. Clark contends that ALG cannot rely upon the letter of intent or the TSA to demonstrate the parties' intent under the sublease given that Paragraph 12 of the sublease contained an integration clause. *Doc.* 75 at 4–5. In pertinent part, Paragraph 12 of the sublease states, "No terms, conditions, warranties, promises or under-

standings of any nature whatever, expressed or implied, exist between the parties except as may be expressly set forth." *Doc.* 67–1 at 6. Clark also contends that any action on its part that might have constituted a breach under the TSA does not rise to the level of interference with actual possession necessary to constitute a breach of quiet enjoyment under the sublease. *Doc.* 75 at 9. Furthermore, Clark contends that the sublease was not limited to ALG's operations under the TSA, because the TSA included reference to an independent operation that ALG was to develop in the leased space, and the diagram attached to the sublease expresses the same. *See id.* at 9–10. Last, with respect to ALG's constructive eviction argument, Clark argues that ALG was not forced to route around the Harrisburg Site; instead, ALG unilaterally made that decision. *Id.* at 11–12.

With regard to ALG's argument that it was actually evicted from the subleased premises, Clark's response is two-fold: (1) "[t]he CDS facilities referenced in the letter are the various CDS facilities other than Harrisburg where ALG's customers submitted freight and in which ALG held no interest" and (2) ALG had already abandoned the Harrisburg Site when it withheld rental payments beginning in November 2010. *Docs.* 66 at 14–15 & 75 at 13–14.

### 1. Interpretation of the Sublease.

▇▇▇▇ In Pennsylvania, it is a basic premise that the interpretation of any contract, such as a sublease, is a question of law. *Humberston v. Chevron U.S.A., Inc.,* 75 A.3d 504, 509–10 (Pa.Super.Ct.2013). "The purpose [of] interpreting a lease, like a contract, is [to ascertain] the intention of the parties, and in doing so recourse must be had to the terms of the writing itself." 30 Pennsylvania Law Encyclopedia, Landlord and Tenant § 27 (2003). Such terms,

in the absence of ambiguity, furnish the true guide to the parties' intention; therefore, the plain meaning of the language of a lease is to be given effect. *See Drysdale v. Woerth,* 153 F.Supp.2d 678, 685 (E.D.Pa. 2001) (quoting *Warren v. Greenfield,* 407 Pa.Super. 600, 595 A.2d 1308, 1311 (Pa.Super.Ct.1991)) ("[T]he intent of the parties to a written contract is regarded as embodied in the writing itself."); *Willison v. Consolidation Coal Corp.,* 536 Pa. 49, 637 A.2d 979, 982 (Pa.1994). Moreover, the parol evidence rule bars evidence of prior representations in a fully integrated contract. *See Rahemtulla v. Hassam,* 539 F.Supp.2d 755, 772 (M.D.Pa.2008) (citations omitted). "Where a written contract contains an integration clause, 'the law declares the writing to not only be the best, but the only evidence of the parties' agreement.'" *Id.* at 772–73 (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 436 (2004)). Integration clauses thus serve to give effect to the parol evidence rule: "the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract." *Id.* at 773 (quoting *Hart v. Arnold,* 884 A.2d 316, 341 (Pa.Super.Ct.2005)). Nevertheless, even where a contract contains an integration clause, a court may evaluate extrinsic evidence, including bargaining history, to determine whether contractual language is ambiguous and to clarify an ambiguous contractual term. *Bethlehem Steel Corp. v. United States,* 270 F.3d 135, 139 (3d Cir.2001); *see also Neff v. Cooper Hosp./Univ. Medical Center,* No. CIV. A. 96–5875, 1999 WL 667283, at *8 (E.D.Pa. Aug. 24, 1999) ("Where, as in this case, the Court determines that a contract with an integration clause contains ambiguous terms, it is ap-

propriate to receive in evidence parol evidence ... to explain the meaning of the ambiguous terms.").

 The term "ambiguous" has been defined as "intellectual uncertainty; ... the condition of admitting two or more meanings, of being understood in more than one way, or referring to two or more things at the same time." *Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1011 (3d Cir.1980). In other words, when the court can divine the term's meaning "without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends," the term is not ambiguous. *Baney v. Eoute,* 784 A.2d 132, 136 (Pa.Super.Ct.2001). Last, in determining whether the relevant contractual terms are ambiguous, courts must be careful not to consider inadmissible evidence. *See Geiserman v. MacDonald,* 893 F.2d 787, 793 (3d Cir.1990); *Iwashyna v. Dep't of Housing and Urban Dev.,* 1993 WL 313702, at *4 (E.D.Pa. Aug. 13, 1993).

Here, as stated *supra,* the sublease contained an integration clause. In addition, the sublease makes no reference to the TSA or the letter of intent. In fact, the TSA contains its own integration clause, *Doc.* 67–3 at 9, and makes no reference to the sublease. Certainly, if the TSA or letter of intent was material to ALG's purpose for subleasing the Harrisburg Site, it would have been included (or at least referenced) in the sublease. ALG also does not argue that any of the sublease's terms were ambiguous. Rather, ALG merely argues, without once referencing the sublease's terms, that the TSA and letter of intent should be evaluated in connection

with the sublease to understand the parties' intentions. Furthermore, I have evaluated the sublease, and I find no ambiguities contained within it, with regard to the parties' intent. I am precluded, therefore, as a matter of law, from taking extrinsic evidence such as the letter of intent or the TSA into consideration.[6]

### 2. The Covenant of Quiet Enjoyment.

In Pennsylvania, even if it is not expressed in a lease, the covenant of quiet enjoyment is implied. *Kohl v. PNC Bank Nat'l Ass'n,* 590 Pa. 151, 912 A.2d 237, 248 (Pa.2006). The legal implication of the covenant is that the lessor will permit the tenant to enjoy fully the demised premises subject to any rights reserved to the lessor. *Checker Oil Co. of Delaware, Inc. v. Harold H. Hogg, Inc.,* 251 Pa.Super. 351, 380 A.2d 815 (Pa.Super.Ct.1977). The covenant is breached when the landlord blocks the tenant's access to the premises or changes some essential aspect of the premises so substantially as to render the property unsuitable for the purposes for which it is leased. *See 2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies of Greater Philadelphia,* 507 Pa. 166, 489 A.2d 733, 738 (Pa.1985); *Pollock v. Morelli,* 245 Pa.Super. 388, 369 A.2d 458, 460 (Pa.Super.Ct.1976). Under this basic premise, the Pennsylvania courts have long held that a covenant of quiet enjoyment is breached only when the tenant's actual possession is impaired. *Rittenhouse v. Barclay White Inc.,* 425 Pa.Super. 501, 625 A.2d 1208, 1211 (Pa.Super.Ct.1993) (citing *2401 Pennsylvania Avenue Corp.,* 507 Pa. 166, 489 A.2d 733 (Pa.1985)). Thus, actual or constructive eviction is required before such a breach

---

**6.** ALG makes much of the distinction between CDS and Clark. Rather than viewing them as separate entities, for purposes of its argument, ALG contends they are one in the same. Regardless, it is entirely possible for ALG to have executed two separate and wholly unrelated agreements with one entity. Thus, for these purposes, ALG's distinction is irrelevant.

will be found. *Id.* (citing *Derrickheim v. Brown*, 305 Pa.Super. 173, 451 A.2d 477 (1982) (a breach of the covenant for quiet enjoyment does not occur until lessee is evicted from the premises)).

Here, I am unpersuaded that reasonable jurors could find that the covenant of quiet enjoyment, whether expressed or implied, was breached, even when reviewing the facts in the light most favorable to ALG. As an initial matter, I have already determined, *supra*, that the sublease is clear and unambiguous as a matter of law. Under the sublease, ALG's intended use of the Harrisburg Site was for "general warehouse purposes" and other "common and usual purposes pertaining to [its] business." *Doc.* 67–1 at 5. As ALG admits in its counterstatement of facts, only part of its business involves working with freight forwarders and carriers to arrange for the distribution of freight belonging to its customers. *Doc.* 71 at ¶ 2. ALG's CEO provided deposition testimony explaining that ALG would be conducting other business operations out of the Hanisburg Site, in addition to the operations underlying the TSA. *See Doc.* 68–2 at 3. And, in fact, the sublease makes reference to ALG's intent to conduct other business operations at the Hanisburg Site, given its option to bring in other machinery, such as co-mail machines. *See Doc.* 67–1 at 3 [Paragraph 2.3].

Thus, while a breach of the TSA might have required certain freight that CDS was expected to handle to be rerouted, ALG still maintained the right and privilege under the sublease to enter and use the Hanisburg Site for business purposes other than what was contained in the TSA. And, there is nothing in the record demonstrating that as a result of the purported breach ALG was blocked from the Hanis-

burg Site or that the Hanisburg Site was changed in some essential aspect so as to substantially render the property unsuitable for ALG's use of it for its business operations. Rather, ALG chose to stop making rental payments to Clark and abandoned the Hanisburg Site when it became dissatisfied with Clark's handling of the Veritas Freight. Additionally, ALG's decision to withhold rental payments occurred before Clark sent ALG the letter demanding that ALG "cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities." [7] Thus, there was certainly no actual eviction. Moreover, given these facts, no reasonable juror could find that ALG was constructively evicted from the Harrisburg Site resulting in a breach of the covenant of quiet enjoyment. In essence, ALG's actual possession was not interfered with as a result of any purported breach of the TSA. As a result, Clark should be entitled to summary judgment on its breach of contract claim.

## V. *Recommendation.*

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that:

(1) Clark's and CDS' omnibus motion for summary judgment (*Doc.* 65) be **GRANTED IN PART** and **DENIED IN PART:**

 a. The motion should be **GRANTED** with respect to the Sublease Case; and

 b. The motion should be **DENIED** as moot with respect to the TSA Case.

(2) The case shall remain open pending resolution of ALG's third-party complaint against CDS for liability on the sublease.

---

**7.** It is irrelevant whether Clark intended that the letter refer to locations other than the Hanisburg Site given that the letter was sent after ALG began withholding rental payments.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this *3rd* day of *December, 2013.*